UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE RENA FORD,

           Plaintiff,        Civil Action No. 16-11725
                                  Honorable Nancy G. Edmunds
                                  Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [12, 14]**

Plaintiff Michelle Ford ("Ford") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") that she was no longer disabled as of October 1, 2012, and was therefore no longer entitled to receive Disability Insurance Benefits ("DIB") or supplemental security income ("SSI") under the Social Security Act (the "Act") as of that date. Both parties have filed summary judgment motions [12, 14], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Ford has not been disabled under the Act since October 1, 2012. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [14] be GRANTED, Ford's Motion for Summary Judgment [12] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

In the so-called "comparison point decision," dated January 12, 2005, Ford was found disabled and entitled to receive DIB and SSI on her 2003 applications for benefits. (Tr. 73-79). On continuing disability review, however, Ford was found to no longer be disabled as of October 2012. (Tr. 88-93). This determination was upheld on reconsideration by a state agency disability hearing officer. (Tr. 107-22). Subsequently, Ford requested an administrative hearing, which was held on July 24, 2014, before ALJ Joy Turner. (Tr. 28-62). Ford, who was not represented by an attorney, testified at the hearing, as did her mother, Earlene Sherrer, and vocational expert Diane Regan. (*Id.*). On October 9, 2014, the ALJ issued a written decision finding that Ford's disability ended on October 1, 2012. (Tr. 12-23). On March 22, 2016, the Appeals Council denied review. (Tr. 1-6). Ford timely filed for judicial review of the final decision on May 16, 2016. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). Under the eight-step continuing disability review process for DIB recipients, the ALJ must determine at Step One whether the beneficiary engaged in substantial gainful activity at any time after the onset date; at Step Two, whether the beneficiary has an impairment or combination of impairments that meet or medically equal a listed impairment; at Step Three, whether the beneficiary experienced medical improvement; at

Step Four, whether the medical improvement was related to the beneficiary's ability to do work; at Step Five, whether an exception to medical improvement applies; at Step Six, whether the beneficiary's current impairments in combination are severe; at Step Seven, whether the beneficiary can perform her past relevant work in light of her residual functional capacity ("RFC"); and at Step Eight, whether the beneficiary's RFC allows her to perform other work existing in significant numbers in the national economy. *See* 20 C.F.R. §404.1594(f). The process is the same for SSI recipients, except that it does not include the first step of the DIB review process, regarding substantial gainful activity. *See* 20 C.F.R. §416.994(b)(5). Thus, Step Two of the DIB continuing disability review process is Step One of the SSI review process, which has only seven steps.

**C. Background**

    *1. Ford's Reports and Testimony*

At the time of the hearing, Ford was 43 years old, and at 4'11" tall, weighed 238 pounds. (Tr. 35-36). She completed the eleventh grade (subsequently earning a GED) and then earned a certified nursing assistant certificate. (Tr. 37). At the time of the hearing, Ford was single, with three adult children, and was living in an apartment with her mother. (Tr. 36-37). She has not worked since she was injured in a car accident in October of 2003. (Tr. 38).

Ford alleges disability as a result of back, hip, and leg pain, chronic obstructive pulmonary disease ("COPD"), diabetes, gout, and depression. (Tr. 40-42). She testified that she has to undergo breathing treatments four times a day, each of which takes approximately ninety minutes.[1] (Tr. 41-42). She also testified that she can lift one gallon of milk, stand for twenty

---

[1] When Ford's mother, Earlene Sherrer, testified at the administrative hearing, however, she indicated that these breathing treatments take only 15-20 minutes each. (Tr. 55).

minutes at a time, sit for one hour at a time, and walk for approximately ten minutes.[2] (Tr. 46-48). She further indicated that she uses a cane to walk because of difficulty balancing. (Tr. 45).

Ford is able to care for her own personal needs, although her mother helps her get in and out of the bathtub, put on her pants, and tie her shoes. (Tr. 48, 56, 180, 195, 202). Ford does not do any cooking, dishes, or laundry; in essence, she spends her days watching television and playing games on the computer. (Tr. 49-51, 181-82). She attends church on a regular basis and occasionally goes out to dinner or to the movies. (Tr. 51-52, 182, 205). She has no difficulty paying attention, can follow written and spoken instructions "very well," and handles stress and changes in routine "very well." (Tr. 183-84).

2. *Medical Evidence*

Ford underwent a consultative physical examination with Bina Shaw, M.D. on September 6, 2012. (Tr. 232-38). At that examination, Ford reported a history of chronic lower back and right hip pain stemming from a 2003 car accident, as well as a history of COPD. (Tr. 232). On examination, Ford was fully oriented, with normal speech, and she was able to provide her birth date and the current President's name. (Tr. 234). She had full range of motion in her cervical spine, shoulders, elbows, hips, knees, ankles, wrists, hands, and fingers. (Tr. 233, 235-36). Forward flexion of the lumbar spine was 0-60, extension was 0-10, and bilateral lateral flexion was 0-20; there was no SI joint tenderness or midline spine tenderness; no spasms were felt on palpation of the muscles; and straight leg raise testing was negative bilaterally. (Tr. 233, 235). Ford had full strength in all extremities and was able to get off the table and chair without assistance. (Tr. 234). Dr. Shaw opined that Ford can sit, stand, walk, bend up to 30-40 degrees,

---

[2] In her motion for summary judgment, however, Ford asserts that she "is unable to stand or sit longer than 5 minutes" and "unable to lift a gallon of milk." (Doc. #12 at 9). These assertions clearly are at odds with Ford's own hearing testimony.

and lift at least 20 pounds of weight without difficulty for eight hours per day, and that she does not require the use of a cane. (*Id.*).[3]

On October 18, 2012, state agency medical consultant U. Gupta, M.D. reviewed Ford's medical records and assessed her RFC. (Tr. 243-50). Dr. Gupta determined that Ford can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours and stand/walk for 2 hours out of an 8-hour day; and use her hands and feet to push and/or pull. (Tr. 244). Dr. Gupta limited Ford to occasional postural activities, with the exception of frequent balancing and no climbing of ladders, ropes, or scaffolds. (Tr. 245). On December 13, 2012, a second state agency medical expert, Tariq Mahmood, M.D., reviewed Ford's file and affirmed Dr. Gupta's assessment of Ford's RFC. (Tr. 251-59).

Ford has treated with Chaker Diab, D.O. from December 18, 2012, through at least June 30, 2014. (Tr. 260-304). During that time, Dr. Diab indicated Ford's self-report of depression on only one occasion, on April 22, 2013, by circling the word on a checklist ROS [Review of Symptoms] box. (Tr. 271). While Dr. Diab's handwriting is difficult to decipher, it appears that he might also have made a "psych referral" that day. (*Id.*). However, there is no indication that Ford ever sought mental health treatment, and there are no other records from Dr. Diab – or any other medical source – indicating that she reported any other psychological symptoms.

    3.     *Vocational Expert's Testimony*

Diane Regan testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 59-61). The ALJ asked the VE to imagine a claimant of Ford's age, education, and work experience who can perform sedentary work, with the following additional limitations:

---

[3] The ALJ wrote that, "[i]n finding medical improvement in [Ford], [she] afforded considerable weight to Dr. Shaw's opinion because [Dr. Shaw] directly examined [Ford] in her professional capacity as an internist, and her opinion is internally consistent with her examination findings." (Tr. 16). Ford does not challenge the ALJ's handling of Dr. Shaw's opinion.

5

occasional climbing of ramps and stairs (but never ladders, ropes, or scaffolds); frequent balancing, stooping, kneeling, crouching, and crawling; and must avoid constant exposure to dust, fumes, odors, gases, and extreme cold. (Tr. 60). The VE testified that the hypothetical individual would be capable of performing the unskilled jobs of inspector (100,000 jobs in the national economy), sorter (120,000 jobs), and assembler (150,000). (Tr. 60-61).

### D. The ALJ's Findings

Citing the 2005 comparison point decision, the ALJ found that Ford previously suffered from several severe impairments, but as of October 1, 2012, the disability ended, and she had not engaged in substantial gainful activity since that date. (Tr. 14). The ALJ then found that Ford currently has the severe impairments of sequelae of hip fracture and open reduction and internal fixation ("ORIF") of said fracture, low back disorder, COPD, sleep apnea, and obesity, but that none of these impairments meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Ford's RFC, concluding that medical improvement occurred as of October 1, 2012, and, since that time, she has been capable of performing sedentary work, with the following additional limitations: occasional climbing of ramps and stairs (but never ladders, ropes, or scaffolds); frequent balancing, stooping, kneeling, crouching, and crawling; and must avoid constant exposure to dust, fumes, odors, gases, and extreme cold. (Tr. 18). Citing the VE's testimony, the ALJ then found that Ford is capable of performing a significant number of jobs that exist in the national economy. (Tr. 22-23). As a result, the ALJ found that Ford's disability ended on October 1, 2012, and since that time, she has not again become disabled under the Act. (Tr. 23).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative

6

decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v.*

7

*Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F.     Analysis**

In her motion, Ford argues that the ALJ erred in (1) failing to obtain a psychiatric or psychological consultative examination, based on her reports of depression; (2) failing to include a function-by-function assessment in her RFC finding; and (3) failing to re-contact her treating physician regarding any diagnosis of and/or treatment for depression. (Doc. #12 at 11-17). Each of these arguments is addressed below.

> *1.     The ALJ Was Not Required to Obtain a Consultative Psychiatric or Psychological Examination of Ford*

As an initial matter, Ford cites to the Commissioner's regulations, 20 C.F.R. §§404.1503(e), 416.903(e), for the proposition that the ALJ was obligated to obtain a consultative psychological or psychiatric examination based on her testimony and reports that she had developed depression, for which Dr. Diab prescribed medication. (Doc. #12 at 11-12). The cited regulations provide as follows, in relevant part:

> An initial determination by a State agency or the Social Security Administration that you are not disabled (or a Social Security Administration review of a State agency's initial determination), in any case where there is evidence which indicates the existence of a mental

8

> impairment, will be made only after every reasonable effort has been made to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

20 C.F.R. § 404.1503(e). It is clear, then, that the regulations relied on by Ford, on their face, apply only to *initial* determinations for mental impairments. Here, no evidence of any mental impairment entered the record until February 2014, when Ford submitted a disability appeal report, saying, "I [] now have depression on which I am taking medication." (Tr. 211). This was well after the initial determination was made in this continuing disability review case, on October 18, 2012. (Tr. 88-90, 91-93). As such, the regulations cited by Ford did not require the ALJ to obtain a consultative mental status examination. *See, e.g., Spuhler v. Colvin*, 2014 WL 4855743, at *18 n. 11 (E.D. Mich. June 17, 2014).

Moreover, even if the regulations cited by Ford did apply at the hearing stage, the minimal evidence of mental impairment presented by Ford fails to rise to the level that would trigger the ALJ to take action in accordance with her general duty to fully and fairly develop the record. Specifically, at the time of the July 2014 hearing, the only evidence of depression in the record consisted of: (1) Ford's February 2014 self-report to the Agency, discussed above (Tr. 211); (2) her own testimony about receiving antidepressant medication from Dr. Diab (Tr. 41, 44); (3) her mother's testimony that she is "depressed" (Tr. 56, 58); and (4) one treatment note, from April 22, 2013, on which Dr. Diab circled the reported symptom of "Depression" and perhaps noted "psych referral" (Tr. 271).

As for the first three pieces of evidence, the ALJ found that Ford's subjective complaints were not entirely credible and declined to afford significant weight to the testimony of Ms. Sherrer, Ford's mother. (Tr. 19, 21). Ford does not challenge these findings and, thus, this evidence did not trigger any obligation on the part of the ALJ to obtain a consultative mental

9

status examination. *See White v. Colvin*, 2015 WL 5210243, at *11-12 (E.D. Mich. Sept. 3, 2015) (even though ALJ does bear "some obligation to develop the record," that obligation did not require ALJ to obtain a mental health examination "based on [the claimant's] testimony at the hearing that she had anxiety and depression").

Moreover, even assuming that Dr. Diab assessed "depression" and attempted to make a "psych referral" on April 22, 2013 (Tr. 271), this is insufficient to trigger a requirement that the ALJ order a consultative examination. The applicable regulation provides that a consultative examination *may* be obtained "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. §§404.1519a(b), 416.919a(b). Here, there was no inconsistency in the evidence, and it was sufficient to permit the ALJ to make a determination as to Ford's alleged mental impairment. Indeed, the record documents only *one* complaint of depression by Ford to a medical provider (and, notably, she returned to Dr. Diab at least five times after that complaint without again complaining of depression) (Tr. 267-70, 302). Moreover, Ford did not receive any additional mental health treatment, did not report any other mental health symptoms, and does not point to any evidence suggesting that her alleged mental impairment imposes any specific, work-related limitations. As such, the Court finds no error in the ALJ's decision not to obtain a consultative mental health examination. *See White*, 2015 WL 5210243, at *11-12 (ALJ not required to obtain consultative mental health examination where "[o]ther than a prescription for Xanax, the record was devoid of any other medical evidence to support the claimed anxiety").[4]

---

[4] Ford also cites 20 C.F.R. §404.1529(b) in support of her argument that the ALJ should have obtained a consultative psychological or psychiatric examination. (Doc. #12 at 13-14). This regulation provides, in relevant part, that "[w]e will develop evidence regarding the possibility of a medically determinable mental impairment when we have information to suggest that such an impairment exists, *and you allege pain or other symptoms but the medical signs and laboratory*

10

> 2. *The ALJ Was Not Required to Articulate a Function-By-Function Assessment When Determining Ford's RFC*

Ford next argues that the ALJ did not comply with Social Security Ruling ("SSR") 96-8p, which requires a "function-by-function assessment" of the seven strength demands (sitting, standing, walking, lifting, carrying, pushing, and pulling). (Doc. #12 at 14-15 (citing *Soc. Sec. Rul. 96-8p*, 1996 WL 374184, at *5 (July 2, 1996))). Indeed, she claims that "nowhere in the decision does the ALJ actually consider each function separately and the medical evidence relied upon in coming to the conclusion concerning each function." (*Id.* at 15). This argument is without merit.

As an initial matter, the Sixth Circuit has rejected Ford's argument that the ALJ's decision must contain such an explicit, function-by-function discussion, stating as follows:

> Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing …. [T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547-48 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, 251 F.3d 153 (3d Cir. Dec. 19, 2000) (internal citations omitted)); *see also Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007) (ALJ met requirements of SSR 96-8p where the medical evidence supported assessment of medium work capacity).

Moreover, in this case, the ALJ <u>did</u> assess Ford's ability to perform each of the seven

---

*findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms.*" 20 C.F.R. §404.1529(b) (emphasis added). Here, the ALJ found that the medical evidence adequately substantiated the existence of several physical impairments (including sequelae of hip fracture and ORIF, low back disorder, COPD, sleep apnea, and obesity), and found that these impairments "could reasonably be expected to produce the alleged symptoms." (Tr. 14, 19). Thus, there was no need to develop the issue of whether Ford's alleged mental impairment might form the basis for her pain, and Ford's reliance on this regulation is misplaced.

strength demands, finding that she can perform sedentary work, which – as defined by the regulations – involves lifting no more than 10 pounds at a time, with occasional lifting or carrying of objects such as docket files, ledgers, and small tools; and standing and/or walking for no more than two hours in an eight-hour work day, with sitting during the remaining six hours. *See* 20 C.F.R. §§404.1567(b), 416.967(b); *Soc. Sec. Rul. 83-10*, 1983 WL 31251, at *6 (Jan. 1, 1983). The sedentary RFC assessed by the ALJ was entirely consistent with the findings of Dr. Gupta and Dr. Mahmood in each of these seven strength demand areas. (Tr. 244, 252). Here, then, where the ALJ provided a detailed, thorough and fair discussion of the evidence, considered the impact of that evidence on Ford's ability to perform work-related activities, and fashioned an RFC that is supported by the findings of the state agency physicians, the Court finds the RFC analysis sufficient. *See Delgado*, 30 F. App'x at 547-48.[5]

### 3. The ALJ Was Not Required to Re-Contact Dr. Diab

Ford also asserts that the ALJ had a duty to re-contact her treating physician, Dr. Diab, whose treatment notes were largely illegible, to determine whether he diagnosed her with depression and/or prescribed antidepressant medication. (Doc. #12 at 15-17). As the Commissioner points out, however, the regulations relied on by Ford in support of this argument, 20 C.F.R. §§404.1512, 416.912, were removed from the Agency's regulations in March 2012. (Doc. #14 at 22-23). Instead, at the time of Ford's 2014 hearing, the pertinent regulations

---

[5] In challenging the ALJ's RFC finding, Ford also complains that it ignores the fact that she "must [be] connected to a machine that disperses medicine six hours a day." (Doc. #12 at 15). The problem for Ford, however, is that the ALJ specifically found her subjective complaints were not fully credible, and she has not challenged this finding. The ALJ's conclusion finds support in the record. For example, Ford testified that she was sent home from the hospital with a nebulizer after a 2013 admission (Tr. 43), but the medical records do not document that these breathing treatments were prescribed (Tr. 300-01). Similarly, while Ford testified that each breathing treatment takes "an hour and a half" (Tr. 42), her mother indicated that they take only "15, 20 minutes" (Tr. 55). In sum, the Court finds no error in the ALJ's decision to discount Ford's credibility and to decline to include this limitation in her RFC finding.

12

provided ALJs considerably more flexibility in deciding whether to re-contract treating physicians, stating, in relevant part:

> If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency.
>
> \* \* \*
>
> (1) We *may* recontact your treating physician, psychologist, or other medical source….

20 C.F.R. §§404.1520b(c), 416.920b(c) (emphasis added). Recently, the Tenth Circuit Court of Appeals considered the changes made to the regulations in this respect, explaining as follows:

> Nor was the ALJ required to re-contact [the treating source] for clarification of her opinion. Under the regulations in effect at the time of the ALJ's decision, if the ALJ determined that the evidence was inconsistent or insufficient to permit her to determine whether [the claimant] was disabled, she could have taken several different actions to enhance the record, including re-contacting his medical sources. *See* 20 C.F.R. §404.1520b(c) (2012). But, [the claimant] fails to show that inconsistent or insufficient evidence prevented the ALJ from determining whether he was disabled. The ALJ therefore did not err by failing to re-contact [the treating source].

*Jones v. Colvin*, 647 F. App'x 878, 882 (10th Cir. 2016) (footnote omitted); *see also Perry v. Comm'r of Soc. Sec.*, 2016 WL 1084682, at \*2 (E.D. Mich. Mar. 21, 2016) (ALJ had no duty to re-contact claimant's treating psychologist where record contained sufficient evidence to assess claimant's mental impairment). Thus, the applicable regulations did not *require* the ALJ to re-contact Dr. Diab, but merely afforded her the option to do so if she deemed it necessary.

Moreover, the Commissioner persuasively argues that "the choices afforded to the ALJ in the new regulations never even came into play in this case" because, on its face, the new language "only requires the ALJ to make a decision about developing the medical record where

13

the evidence is insufficient to allow her to reach a conclusion about whether the claimant is disabled." (Doc. #14 at 23-24). Here, the ALJ determined that Ford's alleged depression was not a severe impairment, correctly observing that "[n]o other treating or examining source of record observed mental limitations" and that "[t]he record contains no evidence of other mental health treatment, such as psychotherapy." (Tr. 18). Given these facts, even if the ALJ had re-contacted Dr. Diab, and he had confirmed a formal diagnosis of depression and an antidepressant prescription, Ford has not shown that that information would have translated into any specific limitations in mental functioning. Moreover, in finding that Ford is not disabled, the ALJ relied on the VE's testimony that she can perform the jobs of inspector, sorter, and assembler, all of which are unskilled in nature. (Tr. 22-23, 60-61). Ford has failed to identify any evidence in the record even suggesting that her depression caused greater limitations than could be accommodated by unskilled work. Thus, even if the Court were to find that the ALJ erred in failing to re-contact Dr. Diab for clarification of his treatment notes, any such error would be harmless because the record as a whole fails to demonstrate that Ford's alleged depression is severe, let alone that it imposes mental limitations inconsistent with the demands of unskilled work.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [14] be GRANTED, Ford's Motion for Summary Judgment [12] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: January 31, 2017                s/David R. Grand
Ann Arbor, Michigan                    DAVID R. GRAND
                                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 31, 2017.

                                       s/Eddrey O. Butts
                                       EDDREY O. BUTTS
                                       Case Manager